J. EISENBERG, INC. *v.* UNITED STATES (No. 4922)[1]

---

[1] C.A.D. 687.

United States Court of Customs and Patent Appeals, April 23, 1958 [2]

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for appellant.
*George Cochran Doub*, Assistant Attorney General and *Richard E. FitzGibbon*, Chief, Customs Section for the United States.

Before JOHNSON, Chief Judge, and WORLEY, and RICH, Associate Judges

RICH, Judge, delivered the opinion of the court:

This appeal is by the importer from the decision of the United States Customs Court, First Division, C. D. 1865, overruling the protest on the basis of this court's prior decision in *United States* v. *J. Eisenberg, Inc.*, 43 CCPA 105, C. A. D. 616.

The merchandise involved consists of small pieces of wool cloth which are cut from larger pieces incident to the manufacture of garments and discarded as not being useful in other aspects of garment creation. More particularly, the merchandise consists of pieces of knitted wool fabric, derived from a cutting step in the manufacture of sweaters or other garments.

The case has been submitted on the following stipulation:

1—That the merchandise described on the invoices covered by the protest herein as "Overlocks" or "Seam," and assessed for duty at 9 cents per pound under paragraph 1105, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, consists of waste pieces of knitted wool fabric, the same in all material respects as the merchandise known as "seamers" or "noodles" the subject of *United States* v. *J. Eisenberg, Inc.* (Suit 4849), C. A. D. 616.

2—That all other merchandise on the said invoices assessed for duty at 9 cents per pound under the said paragraph 1105, consists of waste pieces of knitted wool fabric the same in all material respects as the merchandise known as "clips" the subject of the said C. A. D. 616.

3—That the record in the said C. A. D. 616 may be incorporated in the record in the protest herein.

The merchandise was classified for duty as "Wool rags" and was assessed at the rate of 9 cents per pound under paragraph 1105 (a) of the Tariff Act of 1930, as modified by G. A. T. T. (T. D. 51802). The protest claims the merchandise is properly dutiable as "Waste, not specially provided for," under paragraph 1555 of the Act as modified by the Torquay Protocol to G. A. T. T. (T. D. 52739) at the rate of 4 per centum ad valorem.

The sole issue presented is whether or not the merchandise is "wool rags" within the common meaning of the term.

[2] Released October 15, 1958.

Appellant, admitting that no question of commercial designation is involved, contends that in determining the common meaning of the term "rags," resort may not be had to legislative history or "other extraneous sources" because the term is not ambiguous.

The Government contends that "in determining the common meaning of that term ["rags"] the Courts may resort not only to standard dictionaries but also to the legislative history of the statute employing the term and may even. receive the opinion testimony of witnesses as to such common meaning."

This court most fully considered the meaning of the term "rags" in the prior *Eisenberg* case, C. A. D. 616, and concluded that the involved merchandise was within that term, after an examination of the legislative history in arriving at Congressional intent as to the meaning of the words "wool rags." The propriety of the court's resort to legislative history was there questioned by appellant in a petition for rehearing. The petition was denied. The brief of appellant in the instant case reargues this point.

As will be seen from the stipulation above set forth, the instant merchandise is the same in all material respects as the "seamers," "noodles," and "clips" involved in the prior *Eisenberg* case and the record of that case is incorporated herein.

The record of the prior *Eisenberg* case has included therein, in turn, the record of *Mattoon & Co., Inc. et al.* v. *United States,* 42 CCPA 19, C. A. D. 563.

No new evidence of any description has been presented in the instant case.

The question of the common meaning of the term "rags" has been before this court many times. In addition to the *Eisenberg* and *Mattoon* cases mentioned above, this court considered the term in *P. Silverman & Son* v. *United States,* 27 CCPA 324, C. A. D. 107; *P. Silverman & Son* v. *United States,* 32 CCPA 99, C. A. D. 292; and *United States* v. *Maurice Lobsitz,* 35 CCPA 146, C. A. D. 386.

In the prior *Eisenberg* decision this court reviewed all of the above-mentioned cases, considered the legislative history of the involved statutes and concluded that the involved merchandise was intended by Congress to be included under the provision for "wool rags" of paragraph 1105 (a).

In reaching its conclusion this court overruled, insofar as they were inconsistant with the prior *Eisenberg* decision, the *Mattoon* and *Lobsitz* cases.

We have carefully considered appellant's brief and oral arguments but are not convinced that this court's conclusions in the prior *Eisenberg* decision were erroneous.

14

We agree with appellant that this is a situation in which the doctrine of *stare decisis* should be applied, but we differ as to which case or cases shall stand as controlling. Appellant would have us reverse the prior *Eisenberg* case and apply *stare decisis* as though that case were now before us, following the overruled *Mattoon* case. This would, indeed, be a perversion of the doctrine, the purpose of which is to stabilize the law. This court in the prior *Eisenberg* case, on the basis of stipulated facts added to the *Mattoon* record and careful reconsideration, came to the conclusion that the *Mattoon* decision was wrong. There being no new evidence, or even a new argument, in the instant suit, we think the doctrine of *stare decisis* must apply herein. The Customs Court was entirely correct in adhering to our decision in the prior *Eisenberg* case and in overruling the protest on that basis. As was said by the Supreme Court of Pennsylvania in *Bickley's Estate*, 270 Pa. 101, 113 A. 68,

We are therefore driven by stare decisis to affirm this decree, recognizing with Lord Coke "that the known certaintie of the law is the safetie of all," and to leave to future legislatures to take such curative action in regard to the matter as to them shall seem wise.

The decision of the Customs Court is *affirmed*.